UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHAN PACK (#B-75034), | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 12 C 4845 ) ) Judge Sara L. Ellis |
| NURSE DALFANITA MOORE, *et al.* | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Nathan Pack, an inmate at Lincoln Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Pack contends that Defendant Correctional Medical Technician Dalfanita Moore subjected him to deliberate indifference to a serious medical condition in violation of his constitutional rights.[1] Moore filed a motion for summary judgment [44] on all of Pack's claims. Because Pack failed to exhaust his administrative remedies and, even if he had, cannot demonstrate that Moore acted with deliberate indifference, the motion for summary judgment is granted.

### BACKGROUND

**I.  Compliance with Local Rule 56.1**

Moore filed a statement of uncontested material facts pursuant to Local Rule 56.1. Together with her motion for summary judgment, Moore included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2. That notice clearly

---

[1] The Complaint [1] lists an additional Defendant "John Doe 1." Moore has provided no further information regarding the identity of this defendant and therefore all potential claims against John Doe 1 are dismissed.

explained the requirements of the Local Rules and warned Pack that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> > (A) numbered paragraphs, each corresponding to and stating a concise summary of the paragraphs to which it is directed, and
> >
> > (B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (C) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

N.D. Ill. L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings." Although *pro se* plaintiffs are often given leniency, compliance with procedural rules is required. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). "[W]e have . . . repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–810 (7th Cir. 2005) (quotation marks and citation omitted).

Despite the admonitions stated above, and despite ample opportunity to do so, Pack failed to file a response to Moore's statement of uncontested facts or even a responsive brief.[2] A motion for summary judgment "requires the responding party to come forward with the evidence that it has—it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (quotation marks and citation omitted). Becuase Pack has failed to do so, Moore's statement of uncontested facts is deemed admitted.

## II. Facts[3]

Pack, currently incarcerated in the Lincoln Correctional Center, filed suit on June 22, 2012, alleging that Moore subjected him to deliberate indifference to a serious medical condition while he was incarcerated at the Cook County Jail.

Moore is not a nurse, but a Correctional Medical Technician ("CMT"), employed by Cermak Health Services of Cook County ("Cermak"). Moore is neither a doctor nor otherwise licensed to practice medicine and does not determine the appropriate course of action for patient care. Moore is supervised by doctors, physician's assistants and residential nurses. She cannot prescribe medicine and, unless in the case of a medical emergency, rarely schedules medical appointments.

---

[2] On July 10, 2013, the Court set a briefing schedule on Moore's motion for summary judgment. Pack did not file a response and his deadline to respond was extended through December 13, 2013. Pack received two additional extensions and was warned that the motion would be deemed fully briefed if he did not file a response by April 30, 2014.

[3] The facts set forth in this section are derived from Moore's statement of facts to the extent it comports with Local Rule 56.1. They are taken in the light most favorable to Pack, the non-movant. The Court has included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

Pack's Complaint alleges that on or about December 25, 2011, with pain in his back and neck, he went to the health care unit. Pack states that he saw Moore and told her he was experiencing pain. Pack further alleges Moore told him how sorry she was that he was going through so much pain and that she should come back to see a doctor.

Pack states that he never saw a doctor, although his pain increased. During the alleged December 25, 2011 appointment, Pack claims that Moore told him that he had muscle spasms and gave him hot packs. Pack testified that Moore was nice to him, but he brought this suit because "they wasn't trying to help me with my problem." L.R. 56.1 Stmt. (Doc. 46) ¶ 11. Pack states generally that when he told "them" about his neck and back, "they" gave him Ibuprofen; however, Ibuprofen did not help his pain and he needed muscle relaxers. *Id.* The Complaint states that Pack filed grievances about his medical care, that scheduled appointments never occurred, and that "they" lied about giving him medication. The Complaint further states that Pack's pain "worsen[ed] as if to 'deteriorate'" and he could not sleep. *Id.* ¶ 13.

Pack entered the Cook County Department of Corrections ("CCDOC") on September 2, 2011. During his intake screening, Pack complained of back pain and stated he used a back brace. Pack further stated his neck and back pain started in 2010.

On December 4, 2011, Pack filled out a Health Service Request Form ("HSR") for neck and back pain. On December 9, 2011, Residential Nurse ("RN") Chidinma Onyeachonam examined Pack. RN Onyeachonam noted in Pack's medical records that Pack reported he had been in a car accident and had neck pain for two months. Onyeachonam prescribed Tylenol to treat Pack's pain.

On December 22, 2011, Pack filled out another HSR for neck and lower back pain. Moore was not working on December 22, 2011 and has no independent recollection of meeting with or treating Pack on or about December 25, 2011, or at any other time. On April 5, 2012, Moore entered Pack's HSR into the computer system noting that Pack requested to have his teeth cleaned. This is the only documented interaction Moore had with Pack.

On December 27, 2011, RN Patricia Zieman examined Pack in the dispensary for neck and lower back pain. Zieman gave Pack Tylenol and hot packs with instructions regarding pain management. On February 5, 2012, RN Onyeachonam examined Pack for pain that Pack reported was not constant. She prescribed Tylenol per protocol. On February 21, 2012, an unnamed CMT examined Pack for neck and back pain. The notes indicate that Pack was doing 500 to 600 push-ups a day.

On February 22, 2012, Dr. Terrance Baker examined Pack. Dr. Baker prescribed 600 mg of Ibuprofen every eight hours. On March 12, 2012, RN Onyeachonam examined Pack again and noted that Pack had suffered neck pain for eight months. She also noted that Pack was being treated with 600 mg Motrin.

On April 3, 2012, Pack again filled out an HSR for pain in his neck and lower back and a separate HSR for a dental cleaning (this is Pack's only documented interaction with Defendant Moore). On April 6, 2012, Dr. Baker again examined Pack and noted that, although he complained about neck and shoulder pain, Pack was in no apparent distress and was heavily muscled. Pack told Dr. Baker that he performed 600 to 800 push-ups a day. Dr. Baker instructed Pack to stop exercising excessively and ordered 600 mg of Ibuprofen every eight hours for pain. Dr. Baker reviewed Pack's medical records and observed that Pack's weight at

intake was 77.56 kg or 171 lbs and his Body Mass Index ("BMI") was 25 kg/m2. On April 6, 2012, Pack's weight had increased to 101.4 kg and his BMI to 33 kg/m2. If called to testify, Dr. Baker would testify that this weight increase could have been due to Pack's excessive exercising.

On April 7, 2012, one day after being examined by Dr. Baker, Pack filled out another HSR stating that he was suffering from pain in his elbow and neck. On April 12, 2012, RN Newworld Eboigbe examined Pack for neck pain. Pack stated the Motrin was not relieving his pain and requested muscle relaxants. Eboigbe gave Pack a warm pack.

On May 24, 2012, Pack again filled out an HSR complaining of pain in his neck and back. On June 1, 2012, Raven Reynolds examined Pack for neck and back pain. On July 6, 2012, Dr. Baker examined Pack. Dr. Baker noted that Pack's neck was supple and his weight had increased to 105.4 kg and his BMI to 34kg/m2.

On February 15, 2013, shortly before he was released into the custody of the Illinois Department of Corrections, Dr. Baker examined Pack. Pack stated that the Motrin was not relieving his pain and requested muscle relaxants. Pack told Dr. Baker that he was not doing as many push-ups as previously. Dr. Baker noted that Pack still looked heavily muscled and suggested that Pack decrease the number of his exercises. Pack's weight was slightly down, at 101 kg, and his BMI was 33 kg/m2. Dr. Baker gave Pack a trial of the muscle relaxant Robaxin. An x-ray was taken of Pack's cervical spine and lumbosacral spine. The x-ray came back unremarkable.

In addition to the above appointments, Pack was seen by Cermak medical personnel once or twice a month for asthma. Pack also filed Health Service Requests slips to see a dentist on April 3, May 24, June 11, June 12, June 13, and June 25, 2012. Pack saw a dentist on April 13,

June 5, June 18, and July 16, 2012, and June 19 and June 28, 2013. If Pack ever ran out of a medication, he could request a refill and correctional staff would provide the refill.

CCDOC "Inmate Grievance Procedure" Sheriff's Order 11.14.5.0 ("Grievance Procedure") governs the inmate complaint administrative process. Sheriff's Order 11.14.5.0 was in force and effect during the time of Pack's incarceration. The Grievance Procedure was available to all inmates December 2011 through 2012. Inmates receive a copy of the Grievance Procedure when they enter CCDOC as part of the Inmates Rules and Regulations and copies are posted on all of the tiers. Pursuant to the Grievance Procedure, inmates are required to file a grievance and exhaust all administrative remedies prior to filing a lawsuit. In order to exhaust administrative remedies, an inmate must file an appeal of a grievance response.

Pack was familiar with the Grievance Procedure and appeals process. He filed a grievance dated January 22, 2012 that was assigned control number 2012 X 1070. Grievance 2012 X 1070 stated that around December 18, 2011 through December 22, 2011, Pack was seen by health care physician Moore regarding pain in his neck and back. Pack stated that he was directed to return to the health care unit on January 17, 2012, but was never called. In the grievance, Pack requested treatment by an outside hospital and financial compensation for his pain and suffering. Pack received a response to that grievance, which he signed for on March 15, 2012. Pack admits that he never filed a request for an appeal of this grievance. CCDOC has no record of an appeal of Grievance 2010 X 1070.

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

### I. Failure to Exhaust

Initially, Moore argues that Pack failed to exhaust administrative remedies prior to filing suit. The Prison Litigation Reform Act of 1996 contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before

filing a claim." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999); *Smith v. Zachary*, 255 F.3d 446, 450 (7th Cir. 2001).

An inmate must comply with the rules established by the custodial governmental entity, in this case the County, with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. *Porter v. Nussle,* 534 U.S. 516, 524–25, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Proper use of the facility's grievance system requires a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The record before the Court establishes that Pack submitted one grievance relating to his back and neck pain and that he failed to appeal the grievance as required. Moore's uncontested facts establish that Pack admitted he was aware of the grievance policy and the need to appeal. Pack further admitted that he never appealed the grievance. Pack received the response to his grievance on March 15, 2012 and filed this suit on June 22, 2012. Despite adequate notice of this motion and multiple extensions of time, Pack has failed to rebut Moore's exhaustion argument and the evidence included in the record. Therefore, summary judgment is granted for Moore because Pack failed to exhaust his administrative remedies prior to filing suit.

**II. Merits of Pack's Claim**

Even if Pack had exhausted his administrative remedies prior to filing suit, the record contains no evidence that Moore was deliberately indifferent to any serious medical condition. Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment use the Eighth Amendment standard for deliberate indifference. *Id.*

A claim of deliberate indifference includes both an objective and subjective element. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). "[T]he objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The subjective element requires that the prison official act with a sufficiently culpable state of mind—"something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105–106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted). Furthermore, medical negligence is insufficient to demonstrate deliberate indifference. *See Foelker v. Outagamie County*, 394 F.3d 510, 513 (7th Cir. 2005).

However, a prisoner does not need to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). Instead, it is sufficient if the prisoner demonstrates that the prison official "actually knew of a substantial

risk of harm to the prisoner and acted or failed to act in disregard of that risk." *Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id*. The Court examines the totality of the medical care provided and isolated incidents of delay do not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez*, 111 F.3d at 1374–75.

Moore argues that Pack's neck and back pain were not objectively serious. A serious medical condition is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed. *Foelker*, 394 F.3d at 512–13; *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). A condition is also objectively serious if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quotation marks omitted).

Dr. Baker reviewed Pack's medical records and is prepared to testify that Pack's medical condition was not objectively serious. But Pack sought medical attention on multiple occasions and received diagnostic and medical treatment for his neck and back pain, including prescription pain medication and x-rays. At best, the record establishes questions of fact as to the seriousness of Pack's injuries.

However, with respect to the subjective element, there is no evidence that Moore was criminally reckless. In fact, there is no evidence in the record that Moore ever met with Plaintiff, examined him, or gave him any form of treatment. The only evidence that establishes any contact between Pack and Moore is the April 5, 2012 HSR Moore entered for Pack requesting a dental cleaning. Pack has alleged he saw Moore on December 25, 2011. At that alleged

-11-

meeting, Pack states Moore told him how sorry she was he was in pain, gave him hot packs, and told him to come back to see the doctor. Moore has no memory of meeting with or treating Pack. There is no record evidence of this meeting between Moore and Pack. Moore is not a nurse or doctor. She has no license to practice medicine and may not make medical recommendations, prescribe medications, or otherwise treat patients.

Because § 1983 creates a cause of action based on personal liability and predicated upon fault, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotation marks and citation omitted); *see also J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). There is no evidence that Moore participated in Pack's medical care while at the Cook County Jail. Further, there is no evidence she delayed or denied Pack care for his neck and back injuries. Even if the December 25, 2011 appointment took place, Pack's allegations are only that Moore was sympathetic and treated him to the full extent of her authority as a medical technician—i.e. giving him hot packs and suggesting he return to see a doctor. Pack's allegations do not rise to the level of criminal negligence and there is no evidence in the record to indicate Moore was deliberately indifferent to Pack's complaints.

## CONCLUSION

Because Pack failed to exhaust the administrative grievance process and, even if that Pack had been complied with that process, there is no evidence of deliberate indifference on the part of Moore, her motion for summary judgment [44] is granted. The Clerk is directed to enter judgment in favor of Moore pursuant to Fed. R. Civ. P. 56. The case is terminated.

If Pack wishes to appeal this final order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, he may also be assessed a "strike" under 28 U.S.C. § 1915(g). Pack is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he must prepay the filing fee to file an additional suit in federal court unless he is in imminent danger of serious physical injury. *Id.*

Date: September 9, 2014

Sara L. Ellis
United States District Judge